740 F.2d 1323
 35 Fair Empl.Prac.Cas. 930,
34 Empl. Prac. Dec. P 34,567
Barbara E. CURL, Appellee,
v.
Leroy REAVIS and Iredell County, North Carolina, Appellants.
Barbara E. CURL, Appellant,
v.
Leroy REAVIS and Iredell County, North Carolina, Appellees.
 Nos. 83-1991, 83-1992.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 6, 1984.
Decided Aug. 1, 1984.
 
 Louis L. Lesesne, Jr., Charlotte, N.C. (Gillespie & Lesesne, Charlotte, N.C., on brief), for appellee/cross-appellant.
 William L. Auten, Charlotte, N.C. (Blakeney, Alexander & Machen, Charlotte, N.C., Robert N. Randall, Mooresville, N.C., Neel & Randall, Mooresville, N.C., on brief), for appellants/cross-appellees.
 Before RUSSELL and MURNAGHAN, Circuit Judges, and D. DORTCH WARRINER, United States District Judge for the Eastern District of Virginia, sitting by designation.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 This is an employment discrimination action brought by Barbara E. Curl against Iredell County, North Carolina and Leroy Reavis, the elected Sheriff of Iredell County. Curl complained that while a deputy sheriff in Iredell County she was subjected to discrimination on the basis of her sex, and suffered reprisals for filing charges of employment discrimination with the Equal Employment Opportunity Commission (EEOC). Her suit is based on Secs. 703(a) and 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e-2(a) and 2000e-3(a); the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. Sec. 1983; and two federal funding statutes containing nondiscrimination provisions, Sec. 815 of the Omnibus Crime Control and Safe Streets Act, 42 U.S.C. Sec. 3789d(c)(1), and Sec. 122 of the State and Local Fiscal Assistance Act of 1972, 31 U.S.C. Sec. 6716(a). Curl sought an injunction against further discrimination and against receipt of federal funds under said funding statutes by the County, reinstatement in her former position and instatement in positions alleged to have been discriminatorily denied, back pay, and costs and attorney's fees. Following a nonjury trial, the District Court rendered a decision for plaintiff on the merits, finding that defendants had violated Title VII and the federal funding statutes,[1] but not granting the full range of relief sought. Curl v. Reavis, ST-C-82-91, --- F.Supp. ---- (W.D.N.C. May 24, 1983). Both plaintiff and defendants have appealed from portions of the District Court's final judgment. We conclude that, as to the issues raised in defendants' appeal, the District Court's judgment must be affirmed. As to the issues raised by plaintiff, we reverse in part and remand with instructions to grant certain additional relief, and otherwise affirm.
 
 I.
 A. Findings of Fact
 
 2
 Barbara Curl was hired as a deputy sheriff of Iredell County in July 1976 by Sheriff Reavis' predecessor. She worked initially as a dispatcher-matron. In October 1976 she was certified as a law enforcement officer. She has completed 196 hours of specialized training. In 1977 she was transferred within the Sheriff's Department to records clerk, with no loss of pay or status. Defendant Reavis was elected Sheriff of Iredell County in November 1978, and in December 1978 he transferred Curl, with no change in pay or status, to secretary of the Detective Division.
 
 
 3
 When a road patrol deputy position became open in the Sheriff's Department in June 1980, Curl approached Chief Deputy James W. Medford with a request that she be promoted to that position. A patrol deputy is a uniformed officer, responsible for patrolling an assigned area of the county, making arrests, serving criminal papers and answering calls. Chief Medford's response to Curl was that "there was no way he would put a woman on the road ... in uniform." At this time there were no female patrol deputies, and the individual who ultimately received the position Curl sought was male.
 
 
 4
 Shortly after this incident, Curl learned of an opening for a detective in the Sheriff's Department, and approached Chief Medford with a request to be promoted to this position. A detective is responsible for investigating assigned criminal cases. Curl was denied the detective position, and the record does not reveal who actually obtained it.
 
 
 5
 Late in 1980, Sheriff Reavis transferred Curl back to dispatcher-matron, and she subsequently filed her first EEOC charge of employment discrimination. As a result of this charge, she was confronted by the Sheriff, Chief Medford, and Enforcement Captain Phillip Redmond, and the Sheriff told her to "start looking for another job."
 
 
 6
 Curl applied for a position with the Emergency Communications Center of Iredell County in February 1981. This position was outside the Sheriff's Department, and an announcement of the opening was published. The District Court determined that the requirements for this position did not include training as an Emergency Medical Technician (EMT). James R. Barnes, supervisor of the Center, interviewed Curl for the position. On March 1, 1981 Sheriff Reavis told Curl that if she did not drop her EEOC charge she would not be approved for the dispatcher position with the Center she sought. She did not drop her charge and the two dispatcher vacancies available were filled by men, who did have EMT training. Curl then filed, on April 6, 1981, a second EEOC discrimination charge for retaliatory denial of the dispatcher position.
 
 
 7
 Chief Medford, who had responsibility for discharging employees, fired Curl on April 13, 1981, giving no reasons. Curl had never been formally reprimanded, disciplined or suspended prior to the time she was fired, apart from the actions against her related to her EEOC charges. Her last performance evaluation on February 26, 1981 by her supervisor, Tom Moore, had rated her average or above average in all areas. The Sheriff's Department gave as a basis for the discharge "dispute with supervisors" in a report to the North Carolina Employment Security Commission. The Sheriff testified at trial that the discharge was in large part due to disloyalty, bad attitude and "getting everybody in the whole department upset." Curl filed a third EEOC charge for retaliatory discharge after her firing. Later, she filed a fourth charge for a damaging reference given to a prospective employer.
 
 
 8
 The District Court found that historically and throughout Sheriff Reavis's administration women only held positions as dispatcher-matrons, secretaries and clerical workers in the Sheriff's Department, and that their progression was restricted to clerical office supervision. There was no single line of progression for male deputies, who could be made patrol deputies immediately if certified as law enforcement officers. Job vacancies were not publicized, no objective criteria were offered, and formal application procedures did not exist; in sum, departmental hiring, transfer and promotion decisions were "ad hoc, entirely subjective, and often without the employee's request."
 
 B. Remedies
 
 9
 After determining that Curl qualified as an "employee" for purposes of Title VII, 42 U.S.C. Sec. 2000e(f), the District Court found that plaintiff had established:
 
 
 10
 1) unlawful employment practice violations of Title VII with respect to denial of her application for the patrol deputy position, maintenance of a "male line of progression" that foreclosed women from achieving detective status, and denial of patrol deputy vacancies after July 1980 for which plaintiff did not actually apply because she believed such applications to be futile; and
 
 
 11
 2) retaliation violations of Title VII with respect to intimidation after filing her first charge, denial of the dispatcher job with the Emergency Communications Center, discharge from the Sheriff's Department, and the unfavorable referral.
 
 
 12
 In light of these violations, the District Court found that the nondiscrimination provisions of the federal funding statutes had also been violated.
 
 
 13
 The District Court permanently enjoined defendants from further denial of equal opportunity to women and retaliation for pursuing remedies under Title VII. Sheriff Reavis was also required to develop nondiscriminatory employment, promotion and transfer procedures. Plaintiff won reinstatement, back pay, instatement for the next available promotion to the two positions--patrol deputy and Center dispatcher--she had been illegally denied, reasonable attorney's fees, costs and expenses.
 
 
 14
 Plaintiff's claim of immediate entitlement to a detective position, however, was rejected, as the District Court found that defendants had proven that some road or supervisory experience was a legitimate nondiscriminatory requirement for detective work. The Court refused to order more than equal promotional opportunities for male and female deputies beyond the patrol deputy level.
 
 
 15
 Because plaintiff was discriminatorily denied both the patrol deputy position and the transfer to emergency dispatcher, the District Court initially offered her a conditional option to seek either post:
 
 
 16
 "Since the plaintiff cannot hold both positions, she is entitled to be offered the next available position, either as patrol deputy or E.C.C. dispatcher. She may reject one position to wait for an opening in the other position, but is entitled to only one offer for each position."
 
 
 17
 At the time of this order, or immediately thereafter, there was an opening in an E.C.C. dispatcher position, which was unconditionally offered to Curl. Defendant County agreed to provide EMT training at county expense and on county time. Curl accepted the dispatcher position, equivalent to the one she was denied in 1981, and has received EMT training. She has never renounced an intention to seek the patrol deputy position. After she accepted the dispatcher job, however, the District Court amended its order to provide that defendants had complied with the instatement required originally. In effect, plaintiff was denied any further opportunity for priority instatement in the patrol deputy position, and would henceforth be on the same footing with all other candidates for such a position who had not experienced discrimination.
 
 II.
 Defendants' Appeal
 
 18
 A. Initially, we must determine whether Curl qualified as an "employee" within the meaning of Title VII while serving as a deputy sheriff of Iredell County. Defendants concede that Curl was an applicant for employment in seeking the emergency dispatcher position.[2]
 
 
 19
 Section 701(f) of Title VII, 42 U.S.C. Sec. 2000e(f), defines "employee" as follows:
 
 
 20
 "The term 'employee' means an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision."
 
 
 21
 Defendants do not deny that they are employers for purposes of Title VII, 42 U.S.C. Sec. 2000e(b), and they also admitted in their answer plaintiff's allegation that she was "employed by" the defendants.[3] Since the general definition of an employee is thus met, we turn to the specific exceptions.
 
 
 22
 At the outset we emphasize that "a plaintiff's status as an employee under Title VII is a question of federal, rather than of state, law; it is to be ascertained through consideration of the statutory language of the Act, its legislative history, existing federal case law, and the particular circumstances of the case at hand." Calderon v. Martin County, 639 F.2d 271, 272-73 (5th Cir.1981). State law is only relevant "insofar as it describes the plaintiff's position, including his duties and the way he is hired, supervised and fired." Calderon, 639 F.2d at 273. Accord, Owens v. Rush, 654 F.2d 1370, 1375 (10th Cir.1981). Defendants' reliance on North Carolina case law dealing with the status of deputy sheriffs is thus misplaced, for none of the decisions cited involved Title VII claims interpreting Sec. 2000e(f).[4] Though it is potentially relevant to the question of employee status that under North Carolina law a deputy sheriff serves "at the pleasure" of the appointing Sheriff, N.C.Gen.Stat. Sec. 153A-103(2), we need not consider whether a North Carolina deputy sheriff has any property interest in his employment, since it is not necessary to have such a constitutionally protected interest to bring an employment discrimination claim under Title VII. Cf. Lewis v. Blackburn, 734 F.2d 1000 at 1004 (4th Cir.1984) (even where individual has no property interest in her position, she cannot be removed from that position for an unconstitutional reason such as retaliation for exercise of constitutional rights).
 
 
 23
 Since a North Carolina deputy sheriff is not an elected official, and there is no evidence whatsoever that plaintiff was ever called upon to make policy for the Sheriff's Department or to act as an immediate adviser to the Sheriff with respect to his constitutional or legal powers, the only exception to employee status relevant here is that for the "personal staff" of elected officials. It is clear from the legislative history of this section that the exemption was intended to be "construed narrowly." Joint Explanatory Statement of Managers at the Conference on H.R. 1746, 92d Cong., 2d Sess., reprinted in 1972 U.S.Code Cong. & Ad.News 2137, 2179, 2180. As the Tenth Circuit has put it, "Congress intended for the personal staff exception to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official." Owens, 654 F.2d at 1375.
 
 
 24
 The courts have reached differing results on whether particular deputy sheriffs fall within the "personal staff" exception. See, e.g. Owens, 654 F.2d 1370; Howard v. Ward County, 418 F.Supp. 494 (D.N.D.1976). We are unwilling to treat all deputy sheriffs as employees, or to exclude them wholesale from Title VII's protection. Whether Curl is to be treated as a member of the Sheriff's personal staff requires a careful examination of the nature and circumstances of her role in the Sheriff's Department. See Calderon, 639 F.2d at 273. But see Kyles v. Calcasieu Parish Sheriff's Department, 395 F.Supp. 1307 (W.D.La.1975). Though Curl, like all deputies, served at the pleasure of the Sheriff, her position was created and her compensation paid by the county pursuant to state law. There is no evidence that her working relationship with Sheriff Reavis was "highly intimate and sensitive." Owens, 654 F.2d at 1375. She was not under his personal direction, and she brought her promotion requests before his subordinate. Curl did not occupy a high position within the chain of command, and her duties were primarily clerical and secretarial. As a dispatcher-matron she was responsible for serving subpoenas, typing complaints and reports, and processing female prisoners. As secretary to the Detective Division she typed various documents, handled the detectives' telephone calls and correspondence, and assigned case files. We cannot conclude that Curl was a member of the Sheriff's personal staff, and as an employee she is entitled to pursue her remedies under Title VII.
 
 
 25
 B. On the merits, defendants challenge three of the District Court's factual findings: 1) that plaintiff actually desired to be assigned to a road deputy position; 2) that plaintiff was discharged from the Sheriff's Department in retaliation for filing EEOC charges; and 3) that plaintiff was denied a position in the county Emergency Communications Center as dispatcher because she filed EEOC charges, rather than because she was not an Emergency Medical Technician (EMT). The District Court's findings, of course, cannot be overturned unless "clearly erroneous," Fed.R.Civ.P. 52(a). See Pullman-Standard v. Swint, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982). The first two claims need not long detain us. Defendants concede that the District Court was entitled to find that Curl requested the road patrol deputy position, and only contend that she did not mean her request seriously. This, however, is a question of credibility, on which we must defer to the District Court. See McCrary v. Runyon, 515 F.2d 1082, 1086 (4th Cir.1975) (en banc), aff'd, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). There was no evidence of any particular incident, other than the filing of plaintiff's second EEOC charge seven days earlier, that might have provoked her discharge. The District Court's determination that Curl was discharged in retaliation for filing EEOC charges is not clearly erroneous.[5]
 
 
 26
 Finally, defendants contend that Curl was denied the emergency dispatcher position because she lacked EMT training. The published vacancy notice for the dispatcher position did not list EMT training as a requirement, but James R. Barnes, supervisor of the Emergency Communications Center, testified that this prerequisite was listed in the personnel manual. Barnes' own testimony, however, undermines the County's position that Curl was denied the dispatcher position because of the EMT requirement rather than because of her EEOC charges. Barnes testified that the county manager had instructed him to tell Curl that "if she would drop the charges pending at the time ... she would be transferred to the EOC [sic] as a communications dispatcher." Assuming arguendo that EMT training was ordinarily required for the dispatcher position, a question we need not reach, the evidence overwhelmingly suggests that the County was prepared to overlook Curl's lack of EMT training. Because Curl would have been given the dispatcher position had she dropped her EEOC charge, and the County is now estopped from raising any EMT requirement in her case, the District Court's finding that plaintiff was denied the dispatcher job because of her refusal to drop her EEOC charge is not clearly erroneous.
 
 III.
 Plaintiff's Appeal
 
 27
 Plaintiff raises only two issues on her appeal, both relating to remedies. In particular, she contends that she is entitled to instatement in a detective position in the Sheriff's Department and back pay, notwithstanding her lack of road patrol experience, which the District Court found to be a legitimate nondiscriminatory requirement for that position. She also seeks instatement in a patrol deputy position in the Sheriff's Department, despite having accepted the emergency dispatcher position in the county Emergency Communications Center.
 
 
 28
 As to the first issue, the District Court found that plaintiff succeeded in her burden of proving a violation of Title VII, in that defendants had created a "male line of progression" toward detective work. Road patrol or jail supervisory experience, both restricted to males, were prerequisites for advancement. Since defendants had proven, however, that some road or supervisory experience was a legitimate nondiscriminatory requirement for becoming a detective, and advancement from patrol duty to detective was not automatic, it would be "pure speculation" to order that plaintiff be instated in a position higher than patrol deputy. Accordingly, the District Court refused to order more than "equal promotional opportunities" for all detective candidates, including plaintiff.
 
 
 29
 There is ample evidence to support the District Court's finding that road or supervisory experience was uniformly required of all detectives. Curl admitted that Chief Medford had stated in a departmental meeting that "all detectives needed to be on the road before being assigned to the detective division," and several witnesses testified that they knew of no one who had been made a detective without on-the-street law enforcement experience. Because there is no evidence that patrol deputies could expect to be promoted to detective after any given period of service, and the District Court's finding that promotion was not automatic is not clearly erroneous, requiring instatement as a detective or back pay would be improper.[6]
 
 
 30
 Plaintiff has, however, suffered a direct and substantial injury to her opportunity to become a detective from defendants' discriminatory refusal to allow her to acquire the requisite patrol deputy experience, and merely to accord her equal promotional opportunities with all other candidates does not make her whole. Relief may not be denied altogether to an individual victimized by discrimination on the ground that precise measurement is difficult, Hairston v. McLean Trucking Co., 520 F.2d 226, 232-33 (4th Cir.1975), and our objective is to place plaintiff in a position as near as possible to where she would now be had discrimination not occurred. Albemarle Paper Co. v. Moody, 422 U.S. 405, 418-19, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). Since Curl first sought to become a patrol deputy in June 1980, she must be given full credit as though she had earned patrol deputy experience since that time in evaluating her as a candidate for any future detective opening in the Sheriff's Department she may seek, provided that she actually accepts and serves in a patrol deputy position at some time prior to applying for detective. Such patrol deputy credit shall not affect any other factors which are ordinarily taken into account in making a decision to promote a deputy to detective. The judgment of the District Court shall be modified accordingly.
 
 
 31
 We next address plaintiff's claimed entitlement to a patrol deputy position. The District Court's original order of May 24, 1983, quoted in relevant part in I(B), supra, accorded plaintiff the right to be offered the next available position either as patrol deputy or emergency dispatcher, and stipulated that she was entitled to "only one offer for each position." Nowhere did the order expressly provide that if plaintiff accepted one of the posts which she had been denied in violation of Title VII, that she would forego entitlement to the other. The May 24 order was not itself improper. When plaintiff accepted Iredell County's unconditional offer of the emergency dispatcher position, however, the District Court entered another order on August 2, 1983 ruling that the instatement required by the May 24 order had been satisfied. Never had the parties agreed that by accepting the dispatcher position plaintiff would be waiving her right to be instated as a patrol deputy. Moreover, it is reasonable to assume that she would not have agreed to take the dispatcher job had she known of such a condition, for the patrol deputy job was better compensated and could serve as a stepping stone to detective.
 
 
 32
 We view plaintiff's acceptance of the dispatcher job as a good faith attempt to mitigate her damages, as required by Sec. 706(g) of Title VII, 42 U.S.C. Sec. 2000e-5(g). Under Ford Motor Co. v. EEOC, 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), the rejection of an employer's unconditional offer of a job previously denied terminates further accrual of backpay liability, absent special circumstances. 458 U.S. at 238-39, 102 S.Ct. at 3069. While we do not decide whether plaintiff might have actually forfeited further back pay had she rejected the dispatcher offer, certainly she might reasonably have feared that outcome.
 
 
 33
 The County's offer of the dispatcher job was unconditional, and we are of the opinion that accepting an employer's offer of one position previously denied can in no way affect an employee's right to be instated in another position subsequently, based on a distinct and independent violation of Title VII, unless the employee expressly agrees to waive that right. Curl never expressly waived her entitlement to the patrol deputy job. Had a waiver requirement been attached to the offer of the dispatcher job, Curl could have suffered no liability in rejecting the offer. Ford Motor provides that "an applicant or discharged employee is not required to accept a job offered by the employer on the condition that his claims against the employer be compromised." 458 U.S. at 232 n. 18, 102 S.Ct. at 3066 n. 18. Accordingly, we hold that plaintiff has retained her right to be instated in the first available patrol deputy position with the Sheriff's Department, with backpay, and the District Court's judgment shall be modified to so provide. Her salary as dispatcher will, of course, offset back pay liability for the patrol deputy position, under the mitigation requirement of 42 U.S.C. Sec. 2000e-5(g). Our holding does not otherwise affect the District Court's original May 24 order, and plaintiff is still only entitled to one offer for each position; if she accepts the patrol deputy job, she may not thereafter automatically return to the dispatcher position.
 
 IV.
 
 34
 As to all grounds on which defendants have appealed, the District Court must be affirmed. With respect to plaintiff's appeal, we hold that 1) plaintiff must be given credit for patrol deputy experience since June 1980 in evaluating her for any detective position she may seek, provided that she accepts and serves in a patrol deputy position prior to her application for detective, and 2) plaintiff is entitled to instatement in the first available patrol deputy position in the Sheriff's Department, with backpay as a patrol deputy until that time. We otherwise affirm the District Court. We remand with instructions that the judgment of the District Court be modified accordingly.
 
 
 35
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 [1]
 The District Court found that plaintiff's injuries would be comprehensively remedied under Title VII, and did not consider her separate constitutional claims arising from the same facts under 42 U.S.C. Sec. 1983. Plaintiff has not appealed from the District Court's decision not to address her Sec. 1983 claims
 
 
 [2]
 We do not view the issue of employee status as untimely raised, although defendants first presented it in a motion to dismiss on the second day of trial. Both sections of Title VII on which plaintiff relies require that a claimant be an employee or applicant for employment, 42 U.S.C. Secs. 2000e-2(a), 2000e-3(a), and thus employee status is an element of a substantive Title VII claim. Defendants could properly raise the employee issue by a motion under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, which can be made at any time up to and including trial on the merits. Fed.R.Civ.P. 12(h)(2)
 
 
 [3]
 Paragraph 9 of plaintiff's complaint states in part:
 "Plaintiff Barbara E. Curl was employed by the defendants or their predecessors in interest on or about July 15, 1976 as a deputy sheriff in the communications division of the Iredell County Sheriff's Department."
 The corresponding paragraph of defendants' answer states:
 "The allegations in Paragraph 9 are admitted except that the plaintiff was hired on July 6, 1976."
 
 
 [4]
 See Blake v. Allen, 221 N.C. 445, 20 S.E.2d 552 (1942); Gowens v. Alamance County, 216 N.C. 107, 3 S.E.2d 339 (1939); Styers v. Forsyth County, 212 N.C. 558, 194 S.E. 305 (1937); Cline v. Brown, 24 N.C.App. 209, 210 S.E.2d 446 (1974), cert. denied, 286 N.C. 412, 211 S.E.2d 793 (1975)
 
 
 [5]
 This is not a situation governed by Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and its most recent progeny, Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). When a public employee claims the protection of the First Amendment, such considerations as the preservation of "close working relationships" and prevention of "disruption," Connick, 461 U.S. at ----, 103 S.Ct. at 1692, 75 L.Ed.2d at 723, may well be taken into account. An employee's protection against being discharged in retaliation for filing EEOC charges, however, is not grounded in the Constitution but in Title VII, 42 U.S.C. Sec. 2000e-3(a). The filing of EEOC charges may well engender disruption, controversy and adverse publicity; nevertheless, Congress has elected to protect employees who file such charges from retaliation as a result. Where the District Court has found that a discharge was in retaliation for filing EEOC charges, rather than for some other reason, and that finding is not clearly erroneous, allegations of disruption and injury to close working relationships become irrelevant
 
 
 [6]
 This case is distinguishable from White v. Carolina Paperboard Co., 564 F.2d 1073 (4th Cir.1977), where there was a definite line of progression in an industrial setting, always adhered to by the employer, thus enabling an average worker's progression to be reconstructed with "reasonable accuracy." 564 F.2d at 1084. Here such an average would be poorly correlated to an individual's actual chances of promotion, and we will not order the District Court to engage in a futile mathematical exercise