**Stanley C. ROGOSIN, et al.**

v.

**MAYOR and CITY COUNCIL OF BALTIMORE, et al.**

**No. Civ.A. WMN–00–3474.**

United States District Court, D. Maryland.

March 4, 2002.

Paul D. Raschke, James D. Cathell, Sr., Michelle Ericka Stawinski, Bouland and Brush LLC, Baltimore, MD, for plaintiffs.

Peter E. Keith, Michael W. Skojec, David William Kinkopf, Paul Stephen Caiola, Gallagher Evelius and Jones, Baltimore, MD, for defendants.

### *MEMORANDUM*

NICKERSON, District Judge.

Before the Court is Defendants' Motion for Summary Judgment (Paper No. 56).[1] The motion has been fully briefed and is ripe for decision. Upon a review of the pleadings applicable case law, this Court determines that no hearing is necessary (Local Rule 105.6) and that Defendants' motion will be granted as to both Mr. Rogosin and Mr. Ruckle.

---

1. Also before the Court is Plaintiffs' Motion for Leave to File Surreply (Paper No. 68). The Court will accept Plaintiffs' Surreply for consideration. Plaintiffs have also moved to seal their Opposition Memorandum (Paper No. 61) and their Surreply (Paper No. 69), pursuant to the terms of a Protective Order agreed to by the parties. Earlier in the case, this Court issued an order (Paper No. 59) granting Defendants' motion to seal their Memorandum in Support of Summary Judgment. For the same reasons, the Court will grant both of Plaintiffs' motions to seal.

## I. BACKGROUND

Plaintiffs were terminated from the Baltimore City Law Department, where they had been employed for many years as associate city solicitors. Plaintiffs are white men in their 50's.[2] Mr. Ruckle joined the city's Law Department in 1982; Mr. Rogosin joined in 1988. Both plaintiffs were terminated in 2000.[3] Plaintiffs claim that their termination was the result of discrimination by their employer on the basis of age and race.

In December 1999, Baltimore's newly elected mayor, Martin O'Malley, appointed Thurman Zollicoffer, Jr. as the new City Solicitor. As City Solicitor, Zollicoffer, a 38–year old African American man, became head of the Law Department and, therefore, Plaintiffs' supervisor. Appointed as Zollicoffer's Chief of Staff was Donald Huskey, also an African American man. Mr. Zollicoffer was the decision-maker responsible for Plaintiffs' termination.

The city's Law Department is comprised of eleven divisions, each led by a chief who is charged with supervising attorneys within their divisions and overseeing the handling of cases. When Zollicoffer became City Solicitor, Plaintiff Rogosin was the Associate City Solicitor in charge of the Workers' Compensation and Employee Benefits Division. Plaintiff Ruckle was the Associate City Solicitor in charge of the Labor and Personnel Division. Plaintiffs were "at-will" employees who served at the pleasure of the City Solicitor. *See,* Baltimore City Charter Art. VII, § 99(a)1.b.

Upon Plaintiff Rogosin's termination, he was replaced by Victor Sobotka, who was at that time the chief of the Law Department's Litigation Division. Victor Sobotka is a white male born on May 14, 1947. Mr. Sobotka's old position was filled by Daniel Freidman, a 34–year old white male. Plaintiff Ruckle was temporarily replaced by Joanne Evans, an African–American woman born on January 24, 1949. Ms. Evans was given the position in a probationary capacity, to become permanent if she performed satisfactorily. When she did not, she was replaced by Deborah St. Lawrence, an African–American woman born on November 17, 1968.

■ Following their terminations, Plaintiffs filed suit in this Court, seeking reinstatement and damages for alleged discrimination on the basis of age and race. Count I of the three-count complaint alleges violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.;*[4] Count II alleges racial discrimination in violation of 42 U.S.C. § 1981;[5] and Count III claims violations of Plaintiffs' due process rights pursuant to 42 U.S.C. § 1983.

Defendants have moved for summary judgment as to all three counts.

---

**2.** Mr. Ruckle was born on February 23, 1950. Mr. Rogosin was born on March 15, 1946.

**3.** Plaintiff Ruckle was terminated on February 8, 2000; Plaintiff Rogosin was terminated on April 20, 2000.

**4.** Prior to filing suit in this Court, Plaintiffs filed charges of age discrimination with the United States Equal Employment Opportunity Commission.

**5.** In their Second Amended Complaint, Plaintiffs also allege racial and gender discrimination in violation of Title VII of the Civil Rights Act of 1964. Plaintiffs may not pursue these particular claims, however, because they failed to exhaust the necessary administrative remedies. *See, Taylor v. Virginia Union University,* 193 F.3d 219, 239 (4th Cir.1999). Plaintiffs may pursue their racial discrimination claims pursuant to § 1981, however, which does not require that administrative remedies be sought.

## II. LEGAL STANDARD

Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rule 56 mandates the entry of summary judgment against a party who, after reasonable time for discovery and upon motion, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. Furthermore, the mere existence of some factual dispute is insufficient to defeat a motion for summary judgment; there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, only disputes over those facts that might affect the outcome of the case under the governing law are considered to be "material." *Id.*

## III. DISCUSSION

### A. Applicability of the ADEA

■ The first matter to resolve is whether Plaintiffs Rogosin and Ruckle are employees covered under the ADEA, or whether, as Defendants argue, they are subject to the statute's "personal staff" exception. Section 630(f) of the ADEA states, in pertinent part, that:

The term "employee" means an individual employed by any employer except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency, or political subdivision.

29 U.S.C. § 630(f).

The Fourth Circuit has held that the personal staff exception should be narrowly construed. *Curl v. Reavis*, 740 F.2d 1323, 1328 (4th Cir.1984). Furthermore, the court has stated that Congress intended for the personal staff exception to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official. *Brewster v. Barnes*, 788 F.2d 985, 990–91 (4th Cir.1986) (examining an "essentially identical" exemption contained in the Equal Pay Act). Defendants have presented no evidence that Plaintiffs were in such positions. On the contrary, the facts show Plaintiffs to have had virtually no policymaking or advising responsibilities, whatsoever. *See*, Pls.' Opp.Mot. at 10–11 and citations therein. Therefore, the personal staff exception to the ADEA is not applicable to Plaintiffs.

### B. Age and Race Discrimination

In the absence of direct evidence of discrimination, Plaintiffs must proceed under the now familiar burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Although the *McDonnell Douglas* framework was established originally for Title VII cases, it applies to actions under the ADEA, *see Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 239 (4th Cir.1982), and 42 U.S.C. § 1981. *See Flowers v. Crouch–Walker Corp.*, 552 F.2d 1277 (7th Cir.1977). A plaintiff must first make a prima facie case

of discrimination, and then the burden shifts to the defendant to show a legitimate non-discriminatory reason for its action. The burden then shifts back to the plaintiff to provide sufficient evidence that the employer's proffered explanation was pretextual. *See, Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (rejecting the premise that a plaintiff must also introduce additional, independent evidence of discrimination).

To make out a prima facie case of discrimination, each plaintiff must show that: (1) plaintiff is a member of a protected class;[6] (2) plaintiff suffered some form of adverse employment action; (3) at the time of this adverse action, the employee was performing his or her job at a level which met the employer's legitimate expectations; and (4) following the adverse employment action, the employee was replaced by a younger employee of comparable qualifications. *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

■ Here, each Plaintiff has arguably presented a prima facie case of age discrimination. Both Plaintiffs were over 40 years of age when they were terminated from their positions. Although Plaintiffs were immediately and directly replaced by individuals not substantially younger than they, Plaintiffs are permitted to offer proof of indirect replacement in their prima facie case. *See, Brown v. McLean,* 159 F.3d 898, 905 (4th Cir.1998) (*citing Jones v. Western Geophysical Co.,* 669 F.2d 280, 284–85 (5th Cir.1982)). Finally, Plaintiffs have submitted annual evaluations of their job performance from the 1980's to 1997, which reflect at least "satisfactory" ratings

and occasionally quite positive reviews. *See,* Pls.' Opp. at Exh. 18, 19.

■ As to the claims of racial discrimination, only Plaintiff Ruckle has presented an arguable prima facie case. Both Ms. Evans and Ms. St. Lawrence (either of whom could be viewed as Mr. Ruckle's replacement) are African American. Plaintiff Rogosin, however, cannot escape the fact that he was replaced by a Caucasian, and therefore his § 1981 claim must fail at this stage.

■ Assuming, *arguendo,* that both Plaintiffs have made out prima facie cases of discrimination based on age, and that Plaintiff Ruckle has for race, the next question is whether Defendants have come forward with legitimate, non-discriminatory reasons for Plaintiffs' terminations.

According to Defendants, in early 2000, Mr. Zollicoffer became aware of actions by both Plaintiffs that led him to lose confidence in their willingness and ability to perform their jobs and to help "bring about the reforms and improvements" needed in the Law Department under the new administration. Zollicoffer Aff. at ¶ 14. As to Plaintiff Rogosin, Zollicoffer testifies that shortly after taking office, he received numerous complaints about Plaintiff from employees in the Worker's Compensation Division. Zollicoffer Aff. at ¶ 14. In February of 2000, Zollicoffer called a meeting with Chief of Staff Huskey, Plaintiff Rogosin, and two other supervisory attorneys to address and try to solve problems in the division. *Id.* When confronted with Zollicoffer's concerns, Plaintiff Rogosin concedes that he responded by saying something to the effect of, "if you feel that I'm doing such a below average job or

---

**6.** In age discrimination claims, the "protected class" is defined as people over the age of 40.

29 U.S.C. § 631(a).

incompetent job, you certainly can terminate me." Rogosin Dep. at 58.

Zollicoffer also learned that Plaintiff Rogosin later held a meeting with the attorneys and staff under his supervision in the Worker's Compensation Division. It is undisputed that at this meeting, Plaintiff warned his employees not to report their complaints directly to Solicitor Zollicoffer, and that there would be adverse consequences to them if they did. In a memorandum written by Plaintiff Rogosin to his staff shortly after the meeting, Plaintiff reiterates this warning and also states that "it is the Solicitor's perception of this Division that it is poorly managed and that there are too many complaints ..." and that Plaintiff's "position is very tenuous...." Defs.' Mot. at Ex. 10, att. A. Plaintiff's warnings to his staff were in direct contravention of Mr. Zollicoffer's "open door" policy for complaints, which he had maintained since taking office. Zollicoffer Aff. at ¶ 16.[7]

Finally, Zollicoffer and Huskey also testify that they became aware of a serious attendance problem by an employee under Plaintiff Rogosin's supervision. Zollicoffer and Huskey were informed by the Law Department Administrator that Plaintiff Rogosin should have dealt with the problem much earlier, but had not. Zollicoffer Aff. at ¶ 16; Huskey Aff. at ¶ 5.

As to Plaintiff Ruckle, Defendants offer evidence that Mr. Zollicoffer lost confidence in Plaintiff's ability to litigate effectively on account of his handling of several high-profile cases. First, Plaintiff concedes that in one case, *Richards v. Mayor & City Council of Baltimore*, Case No. WMN–96–2942 (D.Md.), he neglected to file an answer to the Fourth Amended Complaint, and did not designate an expert. Ruckle Dep. at 68–69. In addition, Mr. Zollicoffer understood that Plaintiff was lead counsel in the case of *Sherman v. Baltimore*, Case No. WMN–97–4374 (D.Md.), during which Plaintiff took a two month medical leave. In that case, the City missed several discovery deadlines and, as a result, this Court imposed sanctions on the City and noted "counsel's lack of proper attention." *Sherman*, Memorandum dated October 25, 1999, at 3.

Thirdly, Mr. Zollicoffer learned of several occasions on which Plaintiff Ruckle was reprimanded by this Court in the case of *Swain v. Balog*, Case No. WMN–97–1589 (D.Md.), on which Plaintiff had been lead defense counsel for over two years. Defendant cites the numerous concerns expressed in the memoranda of this Court as to Plaintiff Ruckle's lack of credibility and professional judgment throughout his handling of the litigation. *See*, Defs.' Exh. 13–16. After Plaintiff's termination, which occurred as the City was awaiting this Court's determination of attorneys' fees in *Swain*, this Court awarded $240,000 in fees for the Swain plaintiffs, noting that "the fault for the plethora of pleadings and the over-litigation of this case lies at the feet of Defendant." *See*, *Swain*, Memorandum and Order dated March 13, 2000, Defs.' Exh. 18.

Mr. Zollicoffer testifies that his discovery of these failings led him to lose confidence in Plaintiff Ruckle, and to worry that Plaintiff was projecting a negative public image of the Law Department. Zollicoffer Aff. at ¶ 23. When Plaintiff failed to allay Zollicoffer's concerns, for example, by not turning over case law or files when requested, Mr. Zollicoffer terminated Plaintiff. Zollicoffer Aff. at ¶ 25.

---

**7.** Plaintiffs offer evidence that Plaintiff Rogosin wrote a corrective memo to his staff, and that other members of the division viewed the memo merely as a restatement of the proper chain of command.

In an attempt to show that Defendants' proffered reasons for their terminations were pretextual, Plaintiffs make three primary arguments: one, that many of Plaintiffs' apparent lapses in performance can be explained by extenuating circumstances; two, that Zollicoffer's decisions to terminate were based on insufficient or biased information; and three, that Zollicoffer's own actions prior to the terminations reveal his bias against Plaintiffs based on their race and age.[8] For example, Rogosin asserts that, after warning his staff not to report complaints to Zollicoffer, he issued a corrective memorandum. *See,* Pls.' Opp. at 20. Rogosin also testifies that he was not informed of Zollicoffer's or Huskey's concerns about his management of the department, leading him to believe that the concerns had not been serious. *See,* Huskey Dep. at 97–101, 138. Rogosin also offers the testimony of attorneys who did not perceive him as having management problems. Grant Dep at 38–39; Jackson Dep. at 20–21.

Plaintiff Ruckle seeks to explain his actions in the lawsuits cited by Defendants by providing rather detailed accounts of the internal politics of the Law Department with respect to the cases. *See,* Pls.' Opp. at 26–35. Plaintiff also emphasizes that the attorneys' fees award in the *Swain* case occurred after his termination, and therefore could not have formed the basis of Zollicoffer's decision to fire him. While this is true, Plaintiff simply cannot escape the fact that this Court had rebuked him on several occasions in the months leading up to his termination, when he bore significant responsibility for the course of litigation in those cases.

Plaintiffs' efforts to discount the sources of Zollicoffer's information about them also fall short. According to Plaintiffs, Zollicoffer and Huskey assessed Plaintiffs' performance only by consulting African American employees "who had grudges against the Plaintiffs," and avoided consulting white employees who "were in a better position to know all the facts" about Plaintiffs' performance. *See,* Pls.' Opp.Mot. at 5–6. Plaintiffs characterize Zollicoffer and Huskey's information-gathering process as a "blatantly racist rumor mill." *Id.* at 6. Plaintiffs also point out that their direct supervisor, Deputy Solicitor Frank Derr, had a good opinion of their performance but was not consulted prior to Plaintiffs' terminations. Derr Dep. at 14–15. Evidence of the opinions of other employees, however, does not help to establish Plaintiffs' case. *See, DeJarnette v. Corning, Inc.,* 133 F.3d 293, 299 (4th Cir.1998) (observing that it is not the province of the court "to decide whether the reason [proferred by the employer] was wise, fair, or even correct . . ."). *See also, Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 960–61 (4th Cir. 1996) (quoting *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980)) (stating that "[i]t is the perception of the decision maker which is relevant" to the discrimination inquiry).

Finally, Plaintiffs argue that events of the weeks prior to their terminations reveal age and race biases within the new leadership of the Law Department. For example, in early January, 2000, Zollicoffer held a meeting of supervisory attorneys, at which he asked each attorney to raise his or her hand indicating years of service within the department. Sobotka Dep. at

---

8. Plaintiffs also argue that Defendants tolerated similar performance deficiencies by other employees, without terminating them. Plaintiffs' laundry list of the alleged inadequacies of their former co-workers, however, is unaccompanied by any case law indicating how such evidence would support their claims.

23–25. An attorney with more than 20 years of service said he felt "uncomfortable" raising his hand, and that Zollicoffer had conveyed his disapproval of career civil service employees. *Id.* Courts have established, however, that age and years of service are analytically distinct in the context of an age discrimination claim. *See Hazen Paper Co. v. Biggins,* 507 U.S. 604, 611, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (noting that "it is incorrect to say that a decision based on years of service is necessarily 'age-based.' ")

██ None of Plaintiffs' arguments, nor the evidence submitted to support them, are sufficient to undermine Defendants' showing that Zollicoffer genuinely believed that Plaintiffs were performing poorly and/or were unwilling or unable to conform with his reform of the Law Department. Whether Zollicoffer's beliefs were right or wrong is immaterial; what is relevant and undisputed in this case is that Zollicoffer relied on those beliefs as grounds for dismissing Plaintiffs. *See, Hawkins v. Pepsi-Co, Inc.,* 203 F.3d 274, 282 (4th Cir.2000) ("employment discrimination law 'is not a vehicle for substituting the judgment of a court for that of the employer.' ") (*citing Jiminez v. Mary Washington College,* 57 F.3d 369, 377 (4th Cir.1995)). Based on the evidence submitted in this matter, this Court finds that no rational factfinder could reasonably conclude that Plaintiffs were terminated because of their age or race. *See, Reeves,* 530 U.S. at 148–49, 120 S.Ct. 2097.[9]

## C. Due Process Claims under § 1983[10]

██ A public employee who has been terminated may bring a claim under 42 U.S.C. § 1983 alleging deprivation of either a property interest in continued employment, or a liberty interest in his good reputation and employability, or both, without due process of law as provided by the Fourteenth Amendment to the United States Constitution. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Such a property or liberty interest is created by state or statutes, ordinances, or rules. *Id.* Likewise, a public employee who serves "at the will and pleasure" of a public employer does not have a property right in continued employment, and no due process protection is warranted. *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Because Plaintiffs concede that they were "at will" employees, and they cite no rule, statute, or ordinance to the contrary, the Court finds that they had no property interest in continued employment.

██ Plaintiffs' claims as to their liberty interest also cannot survive summary judgment. In this circuit, a public employee can succeed in a § 1983 claim for deprivation of a liberty interest in employment by establishing that: (1) he was discharged; (2) Charges were made against him in connection with the discharge that were so stigmatizing as to virtually foreclose his freedom to take advantage of other employment opportunities; (3) the charges were false; (4) no meaningful public hearing was conducted prior to discharge; (5) the charges were made public; (6) he requested a name-clearing hearing;

---

**9.** Although ruling in the context of granting judgment as a matter of law, the *Reeves* Court stated that "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same'." *Reeves* at 148–49, 120 S.Ct. 2097 (citing *Anderson,* 477 U.S. at 250–251, 106 S.Ct. 2505 and *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548).

**10.** The Court notes that Plaintiffs did not address these claims in their Opposition to Defendants' Motion for Summary Judgment.

and (7) the request was denied. *Carroll v. Town of University Park*, 12 F.Supp.2d 475, 482 (D.Md.1997) (citations omitted), *aff'd.*, 155 F.3d 558 (4th Cir.1998).

■ Plaintiffs have failed to come forward with evidence on the majority of these elements, including whether Plaintiffs ever requested a name-clearing hearing and whether charges against them were false or stigmatizing.[11] Furthermore, both Plaintiffs obtained employment following their terminations: Rogosin was hired as an attorney with the Maryland Public Defender's Office, and Ruckle practices law in a private firm in the area.[12]

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment separate order consistent with this memorandum will issue.

## ORDER

Pursuant to the foregoing memorandum, and for the reasons stated therein, IT IS this day of March, 2002, by the United States District Court for the District of Maryland, hereby ORDERED:

1. That Defendants' Motion for Summary Judgment (Paper No. 56) is hereby GRANTED;

2. That Plaintiffs' Motion for Leave to File Surreply (Paper No. 68) is hereby GRANTED;

3. That Plaintiffs' Motion to Seal their Opposition Memorandum (Paper No. 61) is hereby GRANTED;

4. That Plaintiffs' Motion to Seal their Surreply (Paper No. 69) is hereby GRANTED;

5. That this case is hereby CLOSED;

6. That any and all prior rulings made by this Court disposing of any claims against any parties are incorporated by reference herein and this order shall be deemed to be a final judgment within the meaning of Fed.R.Civ.P. 58;

7. That all documents kept under seal in this matter shall be returned to counsel or destroyed by the Clerk of the Court; and

8. That the Clerk of the Court shall mail or transmit copies of the foregoing memorandum and this order to all counsel of record.

---

**11.** Many of the charges made public against Plaintiff Ruckle were issued by the federal judiciary, not by Defendants.

**12.** Although Plaintiffs may not have obtained new employment immediately, they have not shown that charges made against them by Defendants had any affect on their employability, much less that they "virtually foreclosed" Plaintiffs' chances of re-employment.